John A. Mullen, Spec. Ref.
In determining the proper value of the properties. involved in this proceeding, in my opinion it is necessary to consider the provisions of the laws under which the acquisition of the air rights, or land, and the erection of these buildings were made possible.
These properties were acquired and constructed pursuant to the provisions of articles 2 and 3 of the Private Housing Finance Law enacted by chapter 803 of the Laws of 1961, effective March 1, 1962. Article 2 thereof is known as the “ limited-profit housing companies law ”. Article 3 thereof is known as the “New York state housing finance agency act”. I shall set forth in full section 11 of article 2 of the Private Housing Finance Law.
“ § 11. Policy and purposes of article. It is hereby declared that there exists in municipalities in this state a seriously inadequate supply of safe and sanitary dwelling accommodations for families and persons of low income, including aged persons of low income; that sudh conditions are due, in large measure to over-crowding and concentration of the population, improper planning, excessive land coverage, lack of proper light, air and space, improper sanitary facilities and inadequate protection from fire hazards; that such conditions constitute an emergency and a grave menace to the health, safety, morals, welfare and comfort of citizens of this state, necessitating speedy relief which cannot readily be provided by the ordinary unaided operation of private enterprise and require that provisions be made by which private free enterprise may be encouraged to invest in companies regulated by law as to rents, profits, dividends and dispostion of their property or franchises *297 and engaged in providing housing facilities and other facilities incidental or appurtenant thereto for families or persons of low income; that it is necessary that provision be made for participation by the state its municipalities and the New York state housing finance agency in the financing of such housing, for the acquisition by such companies of real property required for such purposes and for public assistance to such companies by the granting of tax exemptions; that the cooperation of the state, its subdivisions and the New York state housing finance agency is necessary to accomplish such purposes; that the provision of such adequate, safe and sanitary housing accommodations by such companies jointly or severally are public uses and purposes for which public money may be loaned and private property may be acquired by and for such companies and tax exemptions granted; that such conditions require the creation of the companies hereinafter prescribed for the purpose of attaining the ends herein recited; and the necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination.”
A study of all of the provisions of the Private Housing Finance Law and all of the provisions of the “New York state housing finance agency act ” leads one to the conclusion that the restrictions and controls imposed upon a builder under these laws are many and varied. These same laws provide for certain benefits that can accrue to the builder.
While these laws are admirably conceived for a most worthy purpose, it becomes abundantly clear that they were not designed to acquire land or build thereon economically. This is vividly demonstrated by the fact that the city’s expert places a value on the buildings more than 20% less than the cost of constructing the buildings as indicated in Exhibit 0.
Both petitioner and respondent agree that the proper approach to a determination of a value is the economic approach rather than reproduction cost new less depreciation.
The expert for the petitioner in Exhibit 1 refers to two approaches to an economic evaluation of the property. Within his approach No. 1 he includes two different methods. Method No. 1 includes in the expenses of operation the taxes paid on the assessed valuation of the property for the respective years. In the second method, at page 31, he takes the tax rate, reduced by the 40% exemption, for each respective year and builds that reduced tax rate into his capitalization rate for each respective year. Thus in taking as an expense the reduced taxes only on his appraised value, which is much below the assessed value, *298 and in taking his depreciation only on his appraised value of the buildings instead of on the assessed value of the buildings, he is more realistic than were he to take the taxes and depreciation on assessed values which he does not agree with.
The petitioner’s expert’s second approach deals with a hypothetical situation in which he appraises the buildings and fixes rents and operating expenses therefor as though they were a normal commercial operation, uncontrolled and unaided in any way.
The .respondent’s expert in Exhibit U offers two approaches to determine the economic value of the buildings. The first approach involves treating the buildings as though there were no rent controls, no State aid, no tax reduction, in short, as though they were normal commercial operations.
His second approach is the capitalization of the net income arrived at after using so-called actual income less actual expenses. In theory this appears to be a reasonable approach. Unfortunately, his statement of so-called actual rentals is not correct and is more than the actual rentals, and his statement of actual expenses is not correct and is less than the actual expenses.
I agree with both petitioner and respondent that the proper method by which to arrive at the correct value of this property is the economic approach whereby we adopt a proper capitalization of the correct net income.
This property is by law rigidly rent controlled and rigidly controlled in many other respects. Therefore I do not find much help by giving consideration to capitalization of hypothetical net income from a hypothetical building which could not legally be erected and operated under the laws applicable to this property.
Of all of the economic approaches to find the correct value through capitalization suggested by the experts for the petitioner and the respondent I am most impressed by that suggested by petitioner’s expert in his “ Method No. 2 of Approach No. 1 ” on page 31 of Exhibit 1. He used the actual income except for certain professional space for which he estimated a higher rental income than did the respondent’s expert for the same space. His expenses are the actuals except where certain estimates had to be made, which estimates are reasonable and conform closely to respondent’s expert’s estimates. His eliminating the real estate taxes as an expense and building the reduced tax rate into his capitalization rate I consider a proper method to follow, as I do his taking depreciation only on his appraised value instead of the higher assessed value.
*299 However, I cannot adopt Ms results because I differ with him in two important respects. He has advanced lengthy and, under other circumstances, not unsound arguments to support his land value. But we have in the proof in this case as compelling an example of air rights value fixed by the petitioner itself as it is possible for me to conceive. Stenographer’s minutes, pages 29 and 30, refer to this value and at page 30 counsel for the respondent made the following statement: “ The City then auctioned off these air rights, and there was spirited bidding at this auction. It was not just one bidder. And, although, as you see from the documents in evidence there was an upset price of $25,000 put on the air rights, after bidding, they were bid up to $1,065,000 by the petitioner here.”
Petitioner’s counsel did not dispute this statement and agreed that the deed given by the city to petitioner required the petitioner to expend approximately an additional $100,000. WMle price and value are not always the same, I believe that under the circumstances above set forth they are the same.
The other respect in which I differ with petitioner’s expert is in the percentage he allows for depreciation on the buildings. I agree with respondent’s expert that 1 %% depreciation is the proper amount to allow on these buildings.
In arriving at the correct value of this property by the capitalization of the correct net income at a proper capitalization rate with the reduced tax rate built into that capitalization rate, I find the proper net income for capitalization purposes to be $1,175,000. This net income is derived from the operation of Block 2153, Lot 1 and Block 2162, Lot 1 and the buildings thereon erected as a single unit, which is the way they are actually operated, and which is the way both experts treated them. This combined income is later divided appropriately to arrive at the correct value of each of the two lots and the buildings thereon erected.
In arriving at the correct amount of said net income to be applied to the air rights, I confirm the assessment on the air rights at $1,090,000. I apply a capitalization rate of 9.081% consisting of 6% return on the air rights plus the reduced tax rate of 3.081%. This results in finding that $98,983 of said $1,175,000 is applicable to the air rights. This leaves $1,076,017 applicable to the buildings. To arrive at the correct value of the buildings I capitalize this $1,076,017 applicable to the buildings. I use a capitalization rate of 10.581%, consisting of 6% return on the buildings, 3.081% reduced tax rate and depreciation of 1.5%. This results in a building value of $10,169,333 *300 which I shall round out to $10,170,000 for the years 1965/66, 1966/67 and 1967/68.
With respect to the partial building assessments for the years 1963/64 and 1964/65, I shall take for each Block and Lot for each year the same percentage of the final building value as the Assessor took of his final building value.
The court finds the proper values to be:
Block 2153, Lot 1
Year Air Rights Building Total
1962/63...................... ..... $498,000 0 $498,000 1963/64...................... ..... 555,000 $1,400,000 1,955,000
1964/65...................... ..... 555,000 4,525,000 5,080,000
1965/66...................... ..... 555,000 5,085,000 5,640,000
1966/67...................... ..... 555,000 5,085,000 5,640,000
1967/68...................... ..... 555,000 5,085,000 5,640,000
Block 2162, Lot 1
1962/63...................... ..... 480,000 0 480,000
1963/64...................... ..... 535,000 1,400,000 1,935,000
1964/65...................... ..... 535,000 3,560,000 4,095,000
1965/66...................... ..... 535,000 5,085,000 5,620,000
1966/67...................... ..... 535,000 5,085,000 5,620,000
1967/68...................... ..... 535,000 5,085,000 5,620,000
Costs to petitioner.